# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF MISSISSIPPI
# GREENVILLE DIVISION

**TEAMEKIA SHERICE CARTHEN**                                  **PLAINTIFF**

**V.**                              **NO. 4:21-cv-00033-JMV**

**COMMISSIONER OF SOCIAL SECURITY**                               **DEFENDANT**

## FINAL JUDGMENT

This cause is before the Court on the Plaintiff's complaint pursuant to 42 U.S.C. § 405(g) for judicial review of a September 30, 2020, final decision of the Commissioner of the Social Security Administration (the "Commissioner") finding that the Plaintiff was not disabled. The parties have consented to entry of final judgment by the United States Magistrate Judge under the provisions of 28 U.S.C. § 636(c), with any appeal to the Court of Appeals for the Fifth Circuit.[1] For the following reasons, the Commissioner's decision is reversed and remanded.

### I.     Background

On July 3, 2019, Plaintiff filed an application for Title II disability insurance benefits. Tr. 165-169. The agency denied Plaintiff's application initially and upon reconsideration, and Plaintiff requested a hearing before an ALJ. After conducting the hearing, the ALJ issued a decision dated September 30, 2020, finding that Plaintiff did not meet the Social Security Act's definition of disability and thus was not disabled. Tr. 19-35. The Appeals Council subsequently denied review

---

[1] Judicial review under 42 U.S.C. § 405(g) is limited to two inquiries: (1) whether substantial evidence in the record supports the Commissioner's decision and (2) whether the decision comports with proper legal standards. *See Villa v. Sullivan*, 895 F.2d 1019, 1021 (5th Cir. 1990). "Substantial evidence is 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Greenspan v. Shalala*, 38 F.3d 232, 236 (5th Cir. 1994) (quoting *Richardson v. Perales*, 402 U.S. 389(1971)). "It is more than a mere scintilla, and less than a preponderance." *Spellman v. Shalala*, 1 F.3d 357, 360 (5th Cir. 1993) (citing *Moore v. Sullivan*, 919 F.2d 901, 904 (5th Cir. 1990)). "A decision is supported by substantial evidence if 'credible evidentiary choices or medical findings support the decision.'" *Salmond v. Berryhill*, 892 F.3d 812, 817 (5th Cir. 2018) (citations omitted). The court must be careful not to "reweigh the evidence or substitute . . . [its] judgment" for that of the ALJ, *see Hollis v. Bowen*, 837 F.2d 1378, 1383 (5th Cir. 1988), even if it finds that the evidence preponderates against the Commissioner's decision. *Bowling v. Shalala*, 36 F.3d 431, 434 (5th Cir. 1994); *Harrell v. Bowen*, 862 F.2d 471, 475 (5th Cir. 1988).

of Plaintiff's request for review by notice dated February 11, 2021, making the ALJ's decision the Commissioner's final administrative decision. Tr. 6-9. Plaintiff, now acting pro se, seeks judicial review of the decision pursuant to 42 U.S.C. § 405(g).

The issues as framed by the Plaintiff in her *pro se* capacity are: (i) The ALJ erred to issue a RFC finding in compliance with the social security ruling 96-8; (ii) The ALJ erred to issue a proper and complete step three determination;[2] (iii) the ALJ erred to evaluate testimonial evidence in accordance with the law of the Eleventh Circuit and SSR 16-3p; (iv) The ALJ erred to include all the non-exertional limitation imposed by the combination of all medically determinable impairments into his RFC finding; and (v) the ALJ erred to properly evaluate or include all non-exertional limitation imposed by my medically severe PTSD.

In relevant part, she expounds in her complaint, on these issues as follows:

> Severe PTSD affects my ability to function in society or work places, affects my memory, lack of concentration, fear, panic attacks, flash blacks, nightmares, headaches throughout the day, crying spells, mood disorder, anxiety disorder, sometimes paranoia when I go places; afraid of forgetting where I am. I have to write things to down by charts on a day to day basis. . . . The side effects of the medication that I am taking causes severe drowsiness and dizziness, trouble keeping balance, weakness, blurred vision, sometimes shaking of the hands, and sometimes it is hard to get of bed. Medications a. Wellbutrin: 150 mg 2xs a day b. Hydroxyzine: 50mg 3xs a day c. Seroquel: 400 mg a day at bedtime d. Trazadone: 150 mg at bedtime e. Gabapentin: 600 mg 3xs daily.

Pl. Br. at 7.

At the telephonic hearing before the ALJ, Plaintiff's then-counsel recounted and the claimant testified, in relevant part, as follows:

> She has been diagnosed with PTSD, anxiety disorder major depressive disorder, insomnia, headaches, hypertension arthritis, degenerative joint disease in her right knee, morbid obesity,

---

[2] Though this issue is listed, no argument or facts in support of it are offered nor does the court, itself, find any in support for it.

> diabetes, [inaudible] neuropathy, and blurred vision. She also has hypertension and headaches. Our argument is that Ms. Carthen would be able to meet the demands of even unskilled work activity on a full-time basis. She would not be able to interact appropriately to supervisors and coworkers, and that her mental health symptoms would leave her distracted and off task consistently throughout the workday.
>
> \*\*\*
>
> Q All right. Let's talk about from a mental standpoint, can you just walk us through, you know, day-to-day how you feel mentally that you think interferes with your ability to work?
> A Well, my - - I'm always, you know, scared of leaving my house, and, you know, I'm nervous, and confused, and I'm always crying, and stuff, so I have - - you know, just thinking about what happened, so I just be confused a lot.
> Q How often do you having crying spells?
> A It's on a day-to-day basis.
> Q How often do you have flashbacks?
> A Sometimes every day, and I have nightmares at night.
> Q How often do you have nightmares?
> A Four or five times.
> Q Four or five times what, a week?
> A Yes, ma'am.
> Q Are you still having headaches?
> A Yes.
> Q How often?
> A Every day. Most of my headaches be real bad when I have those nightmares.
> Q How long does a headache typically last?
> A Probably about 35, 45 minutes.
> Q And when you get one of those headaches, do you have to do anything during that 35 to 45 minutes that you have the headaches?
> A I have to do like breathing, you know. I can't hardly open my eyes.

Regarding being off task, Plaintiff's counsel inquired at the hearing of the Vocational Expert ("VE"):

> Q For hypothetical two, I'm going back to hypothetical one, and adding that this person in addition to normal breaks is expected to be off task up to 15 percent of the time in an eight-hour workday because of psychological symptoms. Could that person perform those jobs that you gave?
> A No, Your Honor.

Tr. at 42-57.

Following the hearing, the ALJ entered a decision finding that claimant had only the following severe impairments: arthritis, diabetes, obesity, vision impairment, post-traumatic stress disorder (PTSD), and unspecified depressive disorder. No other impairments complained of, aside from headaches and hypertension were even addressed by the ALJ, and regarding those, the ALJ said only this:

> The claimant has also been evaluated and treated for hypertension and headaches. However, these conditions were being managed medically, and the longitudinal medical record shows these conditions do not cause any ongoing functional limitations (Exhibit B2F/3, 6). Furthermore, no aggressive treatment was recommended or anticipated for these conditions. Accordingly, the claimant's medically determinable impairments of hypertension and headaches are non-severe.

Next, the ALJ found no listing impairment, and at step 4, the ALJ found that claimant had the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) except with the following limitations.

> The claimant can lift, carry, push, or pull twenty pounds occasionally and ten pounds frequently. This claimant can stand and/or walk for six hours in an eight-hour workday and sit for six hours in an eight-hour workday. This claimant can occasionally climb ramps or stairs, but should never climb ladders, ropes, or scaffolds. This claimant can occasionally stoop, kneel, crouch, crawl, and balance. This claimant can avoid ordinary workplace obstacles such as boxes or doors ajar. This claimant should avoid all exposure to unprotected heights or dangerous moving machinery. This claimant can perform simple, routine, repetitive tasks and make simple work-related decisions. This claimant can understand, remember, and carry out simple instructions. This claimant can have occasional interaction with coworkers and supervisors, but should never interact with the public. This claimant can receive nonconfrontational supervision. This claimant can adapt to occasional and gradually introduced changes to the work environment. This claimant can sustain concentration, persistence, or pace on tasks for two-hour periods throughout an eight-hour workday.

## II. Standard of Review

Judicial review of the Commissioner's final decision of not disabled is limited under 42 U.S.C. § 405(g) to two inquiries: (1) whether substantial evidence of record supports the Commissioner's decision, and (2) whether the decision comports with relevant legal standards. *See Villa v. Sullivan*, 895 F.2d 1019, 1021 (5th Cir. 1990). The Commissioner's factual findings shall be conclusive if substantial evidence supports them. 42 U.S.C. § 405(g). Substantial evidence "means – and means only – such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (citation and internal quotations omitted). The Commissioner's regulations set forth a five-step sequential evaluation process that must be used to assess whether the claimant meets the definition of disability. See 20 C.F.R. §§ 404.1520(a)(4); 416.920(a)(4).

Of relevance here are Steps Two and Four. At Step Two, the ALJ determines whether any of the claimant's impairments is severe and has lasted or is expected to last a continuous period of at least twelve months. 20 C.F.R. § 416.920(a)(4)(ii) (2017) (citing 20 C.F.R. § 416.909 (2017)). An impairment is severe if it "significantly limits [the claimant's] physical or mental ability to do basic work activities." 20 C.F.R. § 416.920(c) (2017). An impairment is *not* severe "only if it is a slight abnormality having such minimal effect on the individual that it would not be expected to interfere with the individual's ability to work, irrespective of age, education or work experience." *Salmond*, 892 F.3d at 817 (emphasis omitted) (*quoting Loza v. Apfel*, 219 F.3d 378, 391 (5th Cir. 2000)) (stating word for word the standard articulated in *Stone v. Heckler*, 752 F.2d 1099, 1101 (5th Cir. 1985)); *see also* SSR 85-28, 1985 WL 56856, at *3 (Jan. 1, 1985) (stating that an impairment is not severe "when medical evidence establishes only a slight abnormality. . . which

would have no more than a minimal effect on an individual's ability to work even if the individual's age, education, or work experience were specifically considered").

At Step Four, the ALJ must determine the claimant's residual functional capacity ("RFC") to perform the requirement of her past relevant work. *See* 20 C.F.R 404.1520(f). The RFC is an administrative assessment based on the totality of the evidence, not just the medical evidence, and the extent to which the claimant's impairments and related symptoms affect her capacity to do work-related activities. 20 C.F.R. § 416.945(a). *See Chambliss v. Massanari*, 269 F.3d 520, 523 (5th Cir. 2001); 20 C.F.R. § 416.945.

### III.   Law and Analysis

As demonstrated below, the ALJ's failure to find Plaintiff's headaches (as well as related conditions including insomnia and medication side effects) to be severe was plain error. That error was not cured at Step 4 and the RFC adopted at that step by the ALJ is not supported by substantial evidence. Indeed, a review of claimant's neurological medical record – most of which was entirely ignored by the ALJ – demonstrates debilitating and habitual headaches and related impairments unresponsive for years to treatment by specialists, including a long time treating neurologist, Dr. Hadidi (to whose copious treatment records *no mention whatsoever* is made by the ALJ),[3] and a psychiatrist, Dr. Hall, as well as other physicians, not to mention mental health therapists, from onset in early 2015 through at least 2018 (or beyond). Far from being "medically managed" and "not causing any ongoing functional limitations" or requiring "aggressive treatment" the medical record expressly states otherwise. For example, and as set out more fully below, the medical records reflect prescriptions of virtually "hypnotic" amounts for these conditions causing concerning "sedation", drowsiness and a "drugged" affect, as well as constant medication

---

[3] Indeed, the only reference to this specialist is to a two-sentence letter to a claims specialist in March 2017, essentially stating the patient is still being treated by him for PTSD.

changes/adjustments, noted incapacity to work, and multiple findings of virtually *no* medical progress for years despite continuance treatment.

To demonstrate, the undesigned has set forth below in italics the mental/neurological medical record entries referenced by the ALJ in support of the decision. Set forth in bracketed regular type face are the overwhelming number of medical records/treatments ignored entirely (or pertinent record entries omitted from the perilously few mental record recitations the ALJ did make), for the years 2015 through 2018.

In 2015,

> *In January 2015, the claimant presented for anxiety and insomnia. Following examination, the claimant was diagnosed with type 2 diabetes mellitus, anxiety, and insomnia (Exhibit B9F/4-8). During a mental health appointment in April 2015*, [error – this is actually a reference to a March 26, 2015 therapist note by Lisa Phelps] *the claimant was observed to be neatly dressed and groomed. She arrived promptly for her appointment. The claimant indicated that she was having her daughter and granddaughter staying with her and that she enjoyed it. She reported intrusive thoughts and was advised to change sleep habits to address her insomnia (Exhibit B1F/16).* [She reports her psychotropic meds have been changed. She reports no relief at this point. She reports her sleep cont. to be disturbed, sleeping only a couple of hours a night and dozing 30 minutes during day.]
>
> [3/8/15 Dr. Hall, clinical Psychiatrist, Region One Mental Health, initial visit for crying spells everyday, nightmares, difficulty sleeping. Prescribed meds.]
>
> [3/2/15 Dr. Smith new visit unable to sleep, anxiety and depression. meds prescribed.]
>
> [3/17/15 Dr. Smith- still not sleeping-meds not helping, anxiety depression insomnia.]
>
> [4/7/15 Dr Hall psychiatrist- significant headaches ("HAs") can't sleep, tearful upset anxious "clearly can't return to work"; change meds.]

[5/5/15 Dr. Hall - HAs regularly, drowsy and dizzy most of the time. I am concerned she is getting worse not better. Concentration impaired Changed meds.]

[6/2/15 Dr. Hall - sleeps only 2 hours at night. Tearful, exhausted. Meds changed]

[6/18/15 Dr. Smith - unable to sleep, depression. Referral to Dr. Hadidi, a neurologist at Delta Neurology. Taking 10 meds.]
[6/30/15 Dr. Hall - HAs continue; sleeps 2 hours. nightmares PTSD; things going poorly. Changed meds.]

*The claimant presented for headaches and right knee pain in July [27], 2015 She was also noted to have appropriate psychiatric findings (Exhibit B13F/4-7)*. [HAs worse.]

[7/15/15 Initial appt with Neurologist Dr. Hadidi – chronic MIGRAINES provoked by sleep deprivation due to PTSD (witnessed hanging) CT ordered.]

[7/20/15 Dr. Smith - HA more severe, crying, PTSD, insomnia, depression, anxiety]

[7/28/15 Dr. Hall - HAs, sleepiness; prescribed "hypnotic dose" of med by Dr. Hadidi for sleep to provide relief for HAs]

[8/17/15 Dr. Hadidi - Chronic MIGRAINES, insomnia; PTSD causing sleeplessness causing HA, crying in office; change meds]

[9/14/15 Dr. Hadidi - HAs everyday, crying uncontrollably, insomnia PTSD; 8 drugs listed]

[9/16/15Dr. Hall - sleep issues and HAs cont… Doing very poorly; tearful]

[10/12/15 Dr. Haddadi - Chronic MIGRAINES drowsy daytime, insomnia PTSD, 10 meds listed]

*In November 2015,* [visit to Dr. Hall] *the claimant reported that she was taking sertraline, lorazepam, Neurontin, Seroquel, and amitriptyline, but continued to have difficulty concentrating and sleeping*. [Continuing to have HAs] *During evaluation, she made three errors attempting to perform serial sevens. However, she had normal speech, good thought processes that were somewhat slowed, and normal thought content. The provider also noted that the*

*claimant had adequate judgment and insight, as well as intact memory. Although her concentration was significantly impaired as evidenced by her inability to perform serial sevens, the provider noted that the claimant maintained attention throughout the interview. The provider observed that the claimant had sedated, but pleasantly cooperative mood and severely blunted affect. He advised the claimant to discontinue taking Neurontin, Abilify, and lorazepam (Exhibit B4F/32).* [noting both he and Dr. Hadidi treating for HAs and insomnia]

[12/2/15 Dr. Hall - she is sedated; memory and concentration impaired, significant HAs; PTSD; 3-4.5 hours sleep a night; unable to return to work]

In 2016

[1/6/16 Dr. Hall - continues to have HAs and sleep problems. increase meds.]

*During mental health assessment in February* [1] *2016, the claimant was observed to be visibly tearful, had depressed mood, and blunted and tearful affect. The provider noted that her speech was spontaneous, unpressured, and free of distortion. She had appropriate thought process and denied any suicidal or homicidal ideation. The claimant had intact insight and adequate concentration abilities (Exhibit B4F/29).* [She has "persistent severe headaches." "Her psychiatric condition is unimproved from when I first saw her in spite of multiple attempts with multiple therapeutic agents at varying dosage levels."]

[2/11/16 Dr. Hadidi- HAs worse; sleeps only two hours; none of the 5 meds prescribed helped HA.]

[3/9/16 Dr. Hadidi- HAs daily, crying still not sleeping; adjust med.]

[4/6/16 Dr. Hadidi - HAs did not get better; Daily HAs; sleep issues.]

[5/6/16 Dr. Hadidi- Daily HAs; change meds again.]

[6/7/16 Dr. Hadidi - Daily HAs; cant sleep]

[7/13/16 Dr. Hadidi- Daily HAs; PTSD; insomnia etc]

[8/5/16 Dr. Hadidi- HA daily; PTSD insomonia]

[9/15/16 Dr. Smith - Chief complaint HA; crying; depression worse]

[9/15/16 Dr. Hadidi - Daily HA; PTSD; insomnia improved]

[11/15/16 Dr. Hadidi- sleep same; HA same]

In 2017

[1/16/17 Dr. Hadidi - Daily HA "same"; sleep is better]

*The claimant's treating provider noted in March 2017 that the claimant would need to continue her treating with medication for her PTSD condition (Exhibit B18F/1).*[Note: Though not mentioned by the ALJ in his decision, this two-sentence letter is authored by Dr. Hadidi and is the only reference made by the ALJ whatsoever to any medical record reflecting Dr. Hadidi's long treatment history of the Plaintiff.]

**[**3/16/17 Dr. Hadidi - Chronic HA improved; PTSD not well controlled; insomnia]

[5/16/17 Dr. Hadidi - Chronic Headache Daily; restless sleep; PTSD]

[8/16/17 Dr. Hadidi - Chronic HA daily; restless sleep; PTSD]

[10/16/17 Dr. Hadidi - Chronic HA-did not respond to different trials of meds including tompamax and depokote; restless sleep (10pm-2pm); PTSD]

[11/15/17 Dr. Hadidi- Chronic HA everyday; restless sleep; crying; PTSD; adjust meds]

[12/14/17 Dr. Hadidi -chronic HA; restless sleep; PTSD; adjust meds.]

In 2018,

[1/31/18 Dr. Terry (a doctor at Region One Mental Health) - anxious depressed tearful]

[3/14/18 Dr. Hadidi- HA daily lasting 2 hours in morning and 2 in evening; sleep better; PTSD; chronic HA. Cont. meds.]

[4/23/18 Dr. Terry - HA, depressed anxious fearful. Add m ed.]

[7/16/18 Dr. Hadidi-HA has vascular component; HA eased some with med. but bad HA, wakes 3-6 nights a week. Sits up hours til subsides.]

[7/16/18 Dr. Terry - still depressed; sleep better.]

[10/15/18 Dr. Hadidi- chronic HA; PTSD; doesn't stay asleep as well as she did 2 months ago; discuss with Dr. Terry starting on Seroquel again.]

In 2019

[1/15/19 Dr. Hadidi - Having HAs3 nts a week; sleep is "so so"; chronic HA, PTSD]

[3/29/19 Dr. Terry - depressed anxious fearful isolating]

*The claimant presented for a mental health evaluation* [by Dr. Terry] *in April 2019, which showed that she had findings within normal limits (Exhibit B4F/5-6).*

[5/22/19 Dr. Hadidi - sleep is restless; chronic HA improved. Occur mostly at night; PTSD; cont meds]

*The claimant presented for an annual behavioral assessment in September 2019. She reported that she was not sleeping well due to having bad dreams from her past traumas. Mental status evaluation showed that the claimant had depressed mood and flat affect. Although she had flat speech, she was noted to have appropriate thought process. The provider also noted that the claimant was dressed appropriately and was taking her medications as prescribed (Exhibit B17F/1). The claimant presented for a psychological consultative examination in October 2019* [by Dr. Whelan, a psychologist] *The claimant indicated that she experienced a traumatic event while employed as a correctional officer. She noted that she spends time reading or watching television, but does not spend time with others, except for family members. Upon mental status evaluation, the claimant was unable to perform serial sevens, but was able to total six quarters correctly. She could repeat four digits forward, but only two in reverse. The examiner noted some concentration problems, but indicated that the claimant was able to spell some simple words. The claimant was estimated to have low borderline intelligence with very poor insight. The examiner also observed that the claimant had some features of PTSD (Exhibit B8F/2-4) …Michael Whelan, Ph.D., psychologist and consultative examiner, examined the claimant, [but] not provide opinions*

*containing a functional assessment of the claimant's abilities. As such, [this] evaluation, and the objective findings therein,* [is] *not persuasive (Exhibit B7F; B8F).*[The CE, Dr Whelan, also reported: The claimant has had sleep disturbance since she had to cut down the inmate. She sleeps only 3 or 4 hours a night and is very tired most of the time. She is taking a very large amount of medication from the Mental Health Center. She takes Trazadone 150 mg twice a day, 100mg Wellbutrin twice a day, 300 mg Seroquel twice a day and Vistaril twice a day. She also has HAs and she is getting some counseling at the mental health center, but her depression does not seem to be improving.… she can't tell me why she cries all the time, can't sleep and does not have much energy…she is treated at Mental Health Center and apparently has been for several years there. Their records would be important to review…."]

*Amy Baskin, Ph.D., State agency psychological consultant, opined in November 2019 that the claimant had moderate limitations in understanding, remembering, or applying information; interacting with others; concentrating, persisting, or maintaining pace; and adapting or managing oneself. The doctor further opined that the claimant was capable of understanding, remembering, and executing basic and some semi-complex instructions in order to perform routine and repetitive tasks for two-hour blocks of time in an eight-hour workday; was capable of accepting non-confrontational supervision and would likely function best in a non-interpersonally intensive work environment; and would need moderate levels of supervision in order to adapt to change and to maintain work performance (Exhibit B3A/6-7, 9-11). . . . The findings are supported with explanation of what the doctor saw in the record. However, the undersigned finds that the opinion is only somewhat consistent with the record as a whole, which shows that the claimant had additional limitations that the doctor did not note in her opinion, especially in regards to the claimant's ability to only understand, remember, and carry out simple instructions. Notably, the claimant reported that she has difficulty remembering, concentrating, interacting with others, and managing stress (Exhibit B3E/6-7; Hearing Testimony). During evaluation, the claimant was observed to have abnormal mood and affect. However, she was also noted to be pleasantly cooperative (Exhibit B2F/3-7; B4F/29, 32; B16F/1-5). The claimant was observed to have difficulty performing serial sevens, making a few errors. However, the treatment record also demonstrated that the claimant was able to maintain attention during evaluation. Although she had below average estimated intelligence, she was able to spell simple words and complete simple calculations (Exhibit B4F/32; B8F/2-4).*

> [Ms. Baskin, a DDS non-examiner, also found, but the ALJ failed to note, that the Plaintiff would also have "moderate limitations" on her "ability to complete a normal workday and workweek without interruption from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest period."]

In 2020,

> [3/13/20 Dr. Terry - Stable, taking both Serotal and Trazadone, has daytime somnolence. Cont. meds…Withdrawn, constricted, depressed.]

> *Mental status evaluation* [done by phone] *in June* [19] *2020 showed that the claimant had psychiatric findings within normal limits, including behavior, mood and affect, speech, thought process and content, orientation, concentration, memory, abstract reasoning, and intelligence. The provider noted that the claimant had only fair insight, judgment, and fund of knowledge (Exhibit B17F/3-4).*

> [She was continued on Trazadone, Vistaril, Seroquel and Wellbutrin.]

As demonstrated above, the ALJ erred in finding Plaintiff's headaches and related conditions, including insomnia and medication side effects, were not severe for well in excess of one year. That finding is simply not supported by credible evidence. And, having wholly disregarded the same, the ALJ did not properly consider, and the resulting RFC does not contain, any limitation, including time off task during the day or week, aside from routine two-hour breaks, on account of thereof. The RFC simply cannot credibly be said to be supported by substantial evidence. As such, the decision is reversed and remanded for consideration of all of the medical evidence.

**SO ORDERED**, this the 28th day of March, 2022.

*/s/* Jane M. Virden
**UNITED STATES MAGISTRATE JUDGE**